58 CCPA

Wallace L. RICHARDSON, George J. Kautsky and Maurice R. Barusch, Appellants,

v.

Shirl E. COOK and Thomas O. Sistrunk, Appellees.

Patent Appeal No. 8472.

United States Court of Customs and Patent Appeals.

June 10, 1971.

B. I. Rowland, C. J. Tonkin, San Francisco, Cal., for appellants; Peter H. Smolka, Washington, D. C., of counsel.

John F. Sieberth, Baton Rouge, La., for appellees.

Before RICH, ALMOND, BALDWIN, LANE, Judges, and LANDIS, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal by Richardson et al.[1] (hereinafter Richardson) from the decision of the Patent Office Board of Patent Interferences, adhered to on reconsideration, awarding priority of the subject matter set forth in the following count to Cook et al.[2] (hereinafter Cook):

1. An antiknock concentrate consisting essentially of tetramethyl lead, halohydrocarbon scavenger, and toluene, the toluene content of the concentrate being above about 10 per cent by weight of the tetramethyl lead.

Neither party is senior to the other since both parties filed applications on the same date. Both parties, in attempting to show priority of invention by earlier reduction to practice, took testimony. The board found Cook entitled to the date of April 1960 for an actual reduction to practice, and Richardson does not contest the board's decision in respect thereto. What Richardson is dissatisfied with is the board's finding that he failed to prove an actual reduction to practice before April 1960. Richardson alleges that a complete reduction to practice, including stability test-

---

1. Richardson is involved on application serial No. 41,780 filed July 11, 1960 and assigned to Chevron Research Company, formerly California Research Corporation.

2. Cook is involved on application serial No. 200,965 filed June 8, 1962, which was accorded the benefit of the July 11, 1960 filing date of copending parent application serial No. 41,783. The Cook applications are assigned to Ethyl Corporation.

ing by both detonation studies and shipments of the composition under actual conditions of use, took place in 1958, nearly two years prior to the reduction to practice of Cook.

The board concluded that, since the inventive feature of the count resides in the use of toluene for the purpose of overcoming the instability of tetramethyl lead (TML) in the antiknock concentrate, an actual reduction to practice requires the preparation of the composition of the count and "successful testing of the composition for thermal stability or shock sensitivity." In regard to the testing done by Richardson, the board stated:

> \* \* \* The detonation studies purportedly carried out by Richardson on June 19, 1958 are insufficient, incomplete and inconclusive and do not constitute an actual reduction to practice of the composition. The date of these studies has not been proved; the work of Richardson on June 19, 1958 lacks proper corroboration.

The board, apparently, gave no weight to the fact that shipments of the composition of the count under actual use conditions were made in October and November of 1958.

■ We agree with the board that in this case tests for shock sensitivity were required for an actual reduction to practice, since alleviating the problem of stability during the handling of tetramethyl lead (TML) was the sole disclosed purpose for adding toluene to the TML, and since the improved stability of the composition was relied on for patentability. Blicke v. Treves, 241 F.2d 718, 44 CCPA 753 (1957). Contrary to the board, however, we are convinced that the activities carried out by Richardson evidenced a sufficient testing for shock sensitivity, and, thus, constitute an actual reduction to practice. In reaching this conclusion, we have taken into consideration appellees' suggestion that Richardson was required to also make separate tests for thermal stability. We do not agree with appellees, since Richardson in no way relies for patentability on improved thermal stability and there appears to have been no reason to have doubted that the TML-toluene mixture was sufficiently thermally stable to be useful.

■ In regard to what constitutes sufficient testing to establish reduction to practice, this court has applied a rule of reason which necessitates looking at the particular facts of each case and using common sense in determining the extent of testing required. Gordon v. Hubbard, 347 F.2d 1001, 52 CCPA 1598 (1965); White v. Lemmerman, 341 F.2d 110, 52 CCPA 968 (1965). While even appellants admit that the detonation tests could have been more elaborate, the tests performed were evidently not completely useless, as appellees would have us believe. The tests relied on by Richardson to show a reduction to practice are the same ones relied on in the Richardson specification to show that the stability problem had been solved. Those tests were carried out by placing a small amount of fluid in a glass container with a blasting cap, the container then being placed inside an open-ended lead pipe. The blasting cap was detonated and the results observed. Eight fluids were tested by Richardson including water, pure tetraethyl lead (TEL), pure TML, and a TML-toluene mixture within the limitations of the count.

The board was correct when it noted that exacting comparisons cannot be made from these tests, and we are not certain what conclusions can or cannot be drawn from the results. What is clear, however, is that appellants thought the tests showed the composition of the count to be stable and they acted accordingly by publishing their conclusions in a company-wide report and by ordering significant quantities of the composition from suppliers.

When this is coupled with the fact that in October and November of 1958 over 600 pounds of the antiknock concentrate, in one liter containers, were shipped from a du Pont (a supplier of

alkyl lead compounds) facility in New Jersey to Chevron in California, both by air and by rail, and subjected to the shock forces that accompany actual shipments, we think the over-all picture is one showing sufficient testing to establish a reduction to practice. It is noted that Ethyl Corporation, Cook's assignee, in April 1959 also shipped the composition of the count in 10 and 55-gallon drums to Chevron, Richardson's assignee. Apparently, no explosions took place while handling the TML-toluene mixtures during those shipments (whereas a danger of explosion evidently existed in shipments of pure TML), and it is also fairly apparent that Chevron, du Pont, and Ethyl were convinced that there was no danger in shipping the TML when so diluted.

On the whole, then, we are convinced that Richardson has proven that an actual reduction to practice of the composition of the count took place in 1958, or nearly two years prior to Cook's reduction to practice.

There remains yet one more point for discussion. As noted previously, the board found that, in addition to being insufficient to establish reduction to practice, the detonation tests of Richardson were not corroborated as to the date of occurrence. The reason the board so concluded was evidently because the main corroborating witness, Chandler, who aided Richardson in performing the detonation tests, did not explicitly corroborate the June 19, 1958 date. Chandler's corroboration is conceded to be sufficient in all other respects. It is true that Chandler did not specifically mention the date of the tests (appellants claim that it was due solely to inadvertence). However, the evidence must be viewed as a whole in determining whether the testimony of an inventor is corroborated. Beeber v. Krogh, 403 F.2d 743, 56 CCPA 880 (1968). When viewed in this light, we think the testimony on behalf of Richardson clearly fixes the date of the tests as mid-1958, which is well before Cook's reduc-tion to practice. That is, the evidence shows that Richardson ordered samples of pure TML, sufficient for small-scale testing, in May of 1958; Richardson testified that the tests took place in June 1958 and the memorandum of the tests bears that date; the results of the tests were reported in a company-wide report, CAL resume, bearing a July 2, 1958 date, and the date of that report was attested to by several witnesses; it can be inferred from Chandler's testimony that the tests took place at least around the date set forth on the memorandum; and, finally, in the fall of 1958 Chevron ordered fairly large amounts of TML with the suggestion that about 50  per cent toluene be added. We do not have any doubts as to whether the detonation tests took place in mid-1958.

For the foregoing reasons, the decision of the board is reversed.

Reversed.